UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY HARRIS,

                Petitioner,

                                       Case No. 2:22-cv-126

v.

                                       Hon. Hala Y. Jarbou

SARAH SCHROEDER,

                Respondent.

_____/

**OPINION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Anthony Harris is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On December 15, 2017, following a one-day bench trial in the Washtenaw County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b; four counts of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c; and one count of accosting a child for immoral purposes, in violation of Mich. Comp. Laws § 750.145a. On January 22, 2018, the court sentenced Petitioner to concurrent prison terms of 25 to 45 years for each CSC-I conviction, 10 to 15 years for each CSC-II conviction, and 2 to 4 years for accosting a child for immoral purposes.[1]

       On June 10, 2022, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

---

[1] Petitioner has completed his sentence for accosting a child for immoral purposes. MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=456411 (last visited Aug. 26, 2023). He is no longer in custody for that conviction.

I.      Ineffective assistance of counsel [for] failing to seek forensic insi[ght] from an expert witness.

II.     Ineffective assistance of counsel [for] failing to ensure that the defendant's jury waiver form was fully understood and voluntary.

III.    Defendant was denied his due process right to a fair trial. Trial counsel rendered deficient performance by failing to (1) object to det[ective's] and prosecutor's reference to the complainants as victims (2) investigate and present medical records and other favorable evidence that could have benefited the defense . . . (3) adequately advise defendant as to the pros and cons of a plea vs. a trial causing the defendant to receive more than double the offered prison sentence.

IV.     Ineffective assistance of appellate counsel where appellate counsel bypassed significant and obvious issues that warranted reversal.

(Pet., ECF No. 1, PageID.5–10 (punctuation corrected).) Respondent has filed an answer to the petition (ECF No. 4) stating that the grounds should be denied because all four issues lack merit and Petitioner's third and fourth grounds were procedurally defaulted in the Michigan appellate courts.

After Respondent answered the petition—and after Petitioner's time to reply had expired—Petitioner moved the Court to stay these proceedings and hold them in abeyance pending his return to the state court to seek relief from judgment based on an affidavit from a witness that Petitioner contends his counsel should have, but did not, interview or call to the stand. By order entered March 29, 2023, the Court permitted Petitioner a period of 28 days to demonstrate that the stay he requested complied with the requirements of *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005): (1) that there was good cause for his failure to exhaust before filing his habeas petition; (2) that the unexhausted claims were not plainly meritless; and (3) that he had not engaged in intentionally dilatory litigation tactics.

2

Petitioner has responded to the Court's order. Having reviewed Petitioner's submission, the Court concludes that he has not satisfied the requirements of *Rhines*; therefore, his motion to stay these proceedings will be denied. Turning to the merits of the petition, upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court concludes that Petitioner's habeas grounds lack merit. Accordingly, the petition will be denied.

<u>Discussion</u>

## I.   **Procedural History and Motion to Stay**

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant is the father of two daughters, AH and BR, who accused him of multiple sexual assaults. AH was 9 years old at the time; BR was between 11 and 12 years old.
>
> * * *
>
> At trial, AH testified that defendant sexually assaulted her on three separate occasions. On all three occasions, according to AH, defendant called her to his room, asked her to put shorts on, and asked for a massage; defendant then touched and slightly penetrated her vagina digitally or forced her to touch his penis. On the third occasion, defendant also asked her to lick his penis, but she declined. BR testified that defendant sexually assaulted her in a similar manner on three occasions, asking for a massage and then touching her vagina or reaching under her shirt and bra to touch her breasts.
>
> Defendant testified at trial that he never asked AH or BR for massages and that he never touched them sexually, asserting that the girls had made false allegations because they did not like how he was treating their mother and did not want him around. He also testified that AH and BR had been reprimanded for watching

pornography a few days before making these allegations and that they had made the false allegations to avoid getting into trouble.

The trial court convicted defendant as stated.

*People v. Harris*, No. 346048, 2020 WL 359653, at *1 (Mich. Ct. App. Jan. 21. 2020) (footnote omitted).

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals raising two issues—the same issues he raises in his petition as habeas grounds I and II. The Michigan Court of Appeals denied relief by opinion issued January 21, 2020. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same issues he raised in the court of appeals as well as two new issues. By order entered June 30, 2020, the supreme court denied leave to appeal. *People v. Harris*, 944 N.W.2d 704 (Mich. 2020). Petitioner did not file a petition for certiorari in the United States Supreme Court. (*See* Pet., ECF No. 1, PageID.2.)

On December 22, 2020, Petitioner filed a motion for relief from judgment in the trial court, raising two issues—the same issues he raises in his petition as habeas grounds III and IV. (Washtenaw Cnty. Cir. Ct. Register of Actions, ECF No. 1-1, PageID.250–56; Pet'r's Mot. for Relief from J., ECF No. 1-1, PageID.104–50.) The trial court denied Petitioner's motion by order entered June 30, 2021. (Washtenaw Cnty. Cir. Ct. Order, ECF No. 1-1, PageID.198–202.) Petitioner filed a timely application for leave to appeal to the Michigan Court of Appeals, which was denied by order entered November 8, 2021. Petitioner failed to file a timely application for leave to appeal that decision in the Michigan Supreme Court. Petitioner reports that during the 56-day window, he tested positive for COVID-19. The Michigan Supreme Court refused to consider his request to toll the deadline; so Petitioner proceeded with this habeas petition.

4

Petitioner reports that after receiving and reviewing the record—presumably following Respondent's filing of the record with the Court—he "discovered various meritorious issues that he did not know about and or [that were] impossible to know [about] during trial which were not raised by appellate counsel on direct appeal." (Pet'r's Mot. to Stay, ECF No. 6, PageID.2351.) The only information Petitioner initially supplied with regard to the issues read as follows: "an Affidavit made by [a] witness who was present but not questioned about the alleged assault." (*Id.*) Petitioner indicates that he received the affidavit after he filed his petition. (*See id.*, PageID.2352.)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Based on the allegations in the petition and the state court record supplied by the

Respondent, it appears that habeas grounds I and II have been fairly presented to all levels of the Michigan Court system and habeas grounds III and IV have not.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Failure to exhaust is only a barrier to relief, therefore, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust*, 17 F.3d at 160. If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq. See* Mich. Ct. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. Moreover, even if Petitioner could file a second motion, Rule 6.508 bars the state trial court from granting relief if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal . . . unless the defendant establishes that a retroactive change in the law has undermined the prior decision . . . [or] new evidence would make a different result probable on retrial . . . [or] create a significant possibility of actual innocence." Mich. Ct. R. 6.508(D)(2). The Court concludes, therefore, that Petitioner, having already raised grounds III and IV on a prior appeal, has no available state court remedy. To consider those procedurally defaulted claims, the court must determine whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. But the failure to exhaust is not a barrier to relief. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Rust*, 17 F.3d

6

at 160. Thus, with regard to all issues raised in the present petition, the requirement to exhaust

state court remedies was satisfied.

Exhaustion remains an issue, however, because, in his motion to stay, Petitioner now seeks

to add the following new habeas ground:

> V.    An Affidavit made by [a] witness who was present but not questioned about
> the alleged assault.

(Pet'r's Mot. to Stay, ECF No. 6, PageID.2351.) And he suggested that he might have other issues

to bring before the state courts as well. (*Id.* ("The issue[s] being brought forth before the state

courts include but are not limited to [Petitioner's new habeas ground regarding the newly

discovered evidence.]").) Petitioner has not moved to amend his petition to include his new habeas

ground(s). The Court will construe his present motion as a conditional request for leave to do so,

conditioned on the Court's grant of his motion to stay. If Petitioner were granted leave to amend

his petition to add habeas ground(s), the petition would include some claims that are exhausted (or

procedurally defaulted) and one that is not. Such a petition is a "mixed" petition.

Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss

mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust

remedies. However, since the habeas statute was amended to impose a one-year statute of

limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often

effectively precludes future federal habeas review. This is particularly true after the Supreme Court

ruled in *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001), that the limitations period is not tolled

during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-

abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781

(6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could

7

jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines*, 544 U.S. at 277 (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

The "stay and abey" remedy is only appropriate if Petitioner does not have sufficient time remaining in the period of limitation to return to the state courts to exhaust his claims and then, upon completion of that effort, file anew in the federal courts.[2] Thus, consideration of Petitioner's stay motion necessarily requires an inquiry into the timeliness of his claims (and, here, his proposed claims).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under that provision, typically, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on June 30, 2020. Petitioner did not petition for certiorari to the United States Supreme Court, though the period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). That period is typically 90 days. At the time the Michigan Supreme Court denied leave

---

[2] The *Palmer* court concluded that unless Petitioner has at least 60 days—30 days to file his collateral attack in the state court and another 30 days to refile in the federal court after pursuing exhaustion through the appellate process—a stay should be granted. *Palmer*, 276 F.3d at 781. *See also Griffin*, 308 F.3d at 653 (holding that sixty days amounts to a mandatory period of equitable tolling under *Palmer*).

to appeal, however, the Supreme Court had extended the period to 150 days.[3] The 150-day period expired on November 27, 2020. Accordingly, absent tolling, Petitioner would have had one year, until November 27, 2021,[4] in which to file his habeas petition. Petitioner filed the instant petition on June 10, 2022.

But determining timeliness is not that simple. The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007). Thus, for the period of time that Petitioner's request for collateral review was pending, the time did not count against him.

Petitioner filed a request for collateral review on December 22, 2020. The running of the period of limitation was tolled until the request for collateral review was finally decided. In Petitioner's case, the period was tolled until January 3, 2022, when the time to file an application for leave to appeal the Michigan Court of Appeals denial of leave to appeal expired.[5] (*See* Jan. 3, 2022, Correspondence, ECF No. 6-1, PageID.2357.)

---

[3] *See Rules of the Supreme Court of the United States-Miscellaneous Order addressing the Extension of Filing Deadlines [COVID-19]*, 334 F.R.D. 801 (2020) (extending the period to file a petition for certiorari from 90 days to 150 days for petitions due on or after March 19, 2020); *Miscellaneous Order Rescinding COVID-19 Orders*, 338 F.R.D. 801 (2021) (rescinding the extension for orders denying discretionary review issued on or after July 19, 2021).

[4] The Sixth Circuit recently confirmed that the one-year period of limitation runs to and includes the anniversary of the finality date. *See Moss v. Miniard*, 62 F.4th 1002, 1009–10 (6th Cir. 2023).

[5] The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United States Supreme Court. *Lawrence*, 549 U.S. at 332. Moreover, Petitioner could not file a petition for writ of certiorari in the United States Supreme Court with regard to the denial of his

Twenty-five days ran on the period of limitation from the date Petitioner's conviction became final to the date he filed his request for collateral review. The period was tolled by that request, but commenced running again after January 3, 2022. The period ran again for 178 days, until the instant petition was filed. On that date, 203 days had run, 162 days remained. Petitioner's first four habeas grounds, therefore, are timely.

Any new grounds, however, may not be timely. After the petition was filed, the period of limitation continued to run. *Duncan*, 533 U.S. at 181–82. It expired 162 days later on December 9, 2022. Measured by the date Petitioner's conviction became final—and taking into account the tolling from Petitioner's request for collateral review—Petitioner's new habeas ground(s) would be untimely.[6]

---

motion for relief from judgment because the writ is not available to appeal the decision of an intermediate appellate court. *See Gonzalez v. Thaler*, 565 U.S. 134, 152–53 (2012) (holding that, because the Supreme Court can review only judgments of a state's highest court, where a petitioner fails to seek review in the state's highest court, the judgment becomes final when the petitioner's time for seeking that review expires).

[6] The only other way the "new" claims might be considered timely would be if they "relate back" to the original petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that, although claims otherwise barred by AEDPA's limitations period may be added to a habeas petition under Federal Rule of Civil Procedure 15 if they "relate back" to the "conduct, transaction, or occurrence" in the original petition, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. It is not sufficient that the newly asserted claims "relate to the same trial, conviction, or sentence as a timely filed claim . . . ." *Id.* at 662. The Court concludes that Petitioner's claims that counsel failed to investigate or present testimony from Ro'quan Tyler, that counsel failed to object when witnesses Sinks and Harris committed perjury and bolstered the complainant's testimony, and that the judge was biased against Petitioner based upon his race do not arise out of the same conduct, transaction, or occurrence as the grounds alleged in the initial petition. *See, e.g.*, *Cox v. Curtin*, 698 F.Supp.2d 918, 931 (W.D. Mich. 2010) (stating "the Supreme Court 'made crystal clear' in *Mayle*, 'a petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance'" (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005))). Each of Petitioner's proposed

10

But the date the petition became final is not the only possible date for the commencement of the one-year period of limitation. The habeas statute of limitations provision states:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of

(A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Petitioner's "new" claim based on his discovery of new evidence could be timely under § 2244(d)(1)(D) depending upon the date the factual predicate of the claim could have been discovered through the exercise of due diligence. With regard to Petitioner's remaining unidentified claims, however, Petitioner has offered nothing to suggest that timeliness would be gauged by anything other than the time that has passed since the judgment became final.

As noted above, whether a stay is available depends, in part, on the timeliness of Petitioner's proposed new claims. The Supreme Court has held that the type of stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and

---

new claims relies upon entirely different facts than the claims initially raised. *See Pinchon v. Myers*, 615 F.3d 631, 642 (6th Cir. 2010) (noting that *Mayle* requires that new claims "must be 'tied to a common core of operative facts'" with existing claims to relate back).

encouraging petitioners to first exhaust all of their claims in the state courts. *See Rhines*, 544 U.S. at 277. In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278. If Petitioner's new claims were already untimely, they would be plainly meritless.

The Court informed Petitioner of the potential significance of the timeliness of his proposed new claims when the Court directed Petitioner to show cause why he was entitled to a stay of these proceedings by order entered March 29, 2023. (ECF No. 7.) Indeed, the Court advised Petitioner that he would have to show he was entitled to a stay considering all of the *Rhines* factors: (1) good cause for his failure to exhaust before filing his habeas petition; (2) that his unexhausted claims are not plainly meritless; and (3) that he has not engaged in intentionally dilatory litigation tactics. (*Id.*, PageID.2374.) It is against that backdrop that the Court evaluates Petitioner's response to the show-cause order. (ECF No. 9.)

In Petitioner's response he identifies the issues that he intends to exhaust. He provides more detail with regard to the affidavit. He identifies the affiant, Ro'quan Tyler, and explains that Tyler was present during "the alleged assault" of one of the victims. (*Id.*, PageID.2388.)

Petitioner also describes two other issues: Detective Sinks and Nicole Harris testified falsely, bolstering the credibility of the alleged victims; and Judge Swartz was revealed to have racial bias according to a report prepared by Citizens for Racial Equity in Washtenaw during August of 2020. (*Id.*, PageID.2386–2387.)

A.     Affidavit of Ro'Quan Tyler

Petitioner was convicted of assaulting victim AH three times. Petitioner reports that Tyler was present during one of those assaults. (*Id.*, PageID.2388.) That is all of the information that

Petitioner provides regarding the affidavit. He does not suggest that the affiant refuted the victim's claims. Indeed, because the dates of the assaults were uncertain, it would be remarkable if the affiant could rule out the possibility that the assault occurred.

Although Petitioner suggests he obtained Tyler's affidavit only recently, the relevant question "is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). The discovery of "new information . . . 'that merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a factual predicate for purposes of triggering the statute of limitations under § 2244(d)(1)(D).'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))). Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)). "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Redmond v. Jackson*, 295 F.Supp.2d 767, 772 (E.D. Mich. 2003) (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001); *Flanagan*, 154 F.3d at 198–99).

Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 F. App'x. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant

application of § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he took to discover the claims). The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

Petitioner offers no explanation with regard to the steps he took to discover his "new" claim. Certainly, the fact that Tyler was present could not have been a surprise to Petitioner. Petitioner notes that the victim informed the CPS investigator and the investigating detective that the affiant was present during an alleged assault. (*Id.*, PageID.2287–2388.) Thus, Petitioner was aware of Tyler's identity and his presence before trial. Additionally, the victim testified that other persons were present in the locations where the assaults occurred. (*See, e.g.*, Prelim. Exam. Tr., ECF No. 5-2, PageID.629, 632, 634, 636–637, 639; Trial Tr. I, ECF No. 5-8, PageID.688, 696–697, 710–717.)

Under the circumstances, Petitioner has not and cannot show that he was reasonably diligent in presenting any claim based on the presence of affiant Tyler during one of the assaults. Accordingly, the potentially later limitations period trigger of § 2244(d)(1)(D) does not provide Petitioner a later start date and his claim is untimely.

Despite the Court's request for Petitioner to address the timeliness issue, Petitioner has not suggested that equitable tolling might extend the period of limitation to avoid the untimeliness bar. *See, e.g., Holland v. Florida*, 560 U.S. 631, 645 (2010) (concluding that the one-year limitations

period applicable to § 2254 is subject to equitable tolling).[7] Accordingly, based on Petitioner's

response to the Court's "show cause" order, the Court concludes that Petitioner's habeas claim

based on the Tyler affidavit is plainly meritless.

### B.      False testimony of Detective Sinks and Nicole Harris

Petitioner withholds any important details regarding this claim in the same way he withheld

the important details regarding the Tyler affidavit. He does not explain what aspect of the

witnesses' testimony was false or how the testimony bolstered the credibility of the victims. More

importantly, he does not explain why he waited more than four years after the witnesses testified

to even mention this claim. There is nothing in Petitioner's response to the Court's "show cause"

order to suggest that this claim is premised on a factual predicate that could not have been

discovered upon the exercise of due diligence until recently. Thus, the Court concludes that this

claim is also untimely and, therefore, plainly meritless.

### C.      Judicial bias

Finally, Petitioner claims that Washtenaw County Circuit Court Judge David S. Swartz

was biased against Petitioner based on his race. (Pet'r's Resp., ECF No. 9, PageID.2387.) As

---

[7] Petitioner suggests that he has evidence of his actual innocence. (Pet., ECF No. 1, PageID.15–17. In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327) (addressing actual innocence as an exception to procedural default). But a showing of actual innocence must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The evidence Petitioner offers is not "new." All of the information he offers in support of his "actual innocence" claim was available to him at trial," *Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008), and was actually presented to and considered by Judge Swartz. Petitioner has failed to establish his actual innocence and cannot avoid a statute of limitations bar on that basis.

evidence of the bias, Petitioner relies on an investigative report prepared by Citizens for Racial Equity in Washtenaw (CREW). (*Id.*) It appears that CREW no longer makes that report (herein the CREW Report) available online; but the report is available elsewhere. *See, e.g.,* https://www.coloradoadc.org/images/Racial_Justice_Resources/CREW_Final_Report_827-1.pdf (last visited Sept. 3, 2023). The CREW Report discloses statistics regarding prosecution outcomes and sentencing statistics for certain categories of cases based on whether the defendant is a person of color or white. CREW did not include criminal sexual conduct cases in its analysis. CREW Report, p. 3 n.5. Later studies have used different datasets. *See, e.g.*, Sentencing in Michigan 22nd Circuit Court, https://www.courts.michigan.gov/4a0f93/siteassets/reports/c22-sentencing-report-cjars_final.pdf (last visited Sept. 3, 2023); Washtenaw Equity Partnership, Findings and recommendations on Washtenaw County's Criminal Legal System (spring 2023) https://www.washtenawequitypartnership.org/wp-content/uploads/2023/09/WEP-Report-2023-FINAL.pdf (last visited Sept. 3, 2023). Petitioner does not make any claim regarding evidence of Judge Swartz's bias other than his reference to the CREW Report.

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal[]' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (internal citation omitted). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

16

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905. The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)." *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[8] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. at 583. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality

---

[8] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).

Petitioner's reference to the CREW Report does not establish bias in Judge Swartz's handling of Petitioner's determination of guilt or his sentence. The CREW Report found some disparities in Judge Swartz's sentences in certain categories of cases, but in other categories there was no racial disparity. Because the report does not address criminal sexual assault cases, it does not provide any support for Petitioner's claim the Judge Swartz was biased against him.[9]

Moreover, Petitioner offers no support for a claim that Judge Swartz's sentences demonstrate bias. The minimum sentence imposed for the CSC-I convictions, the controlling sentences for Petitioner, were the product of a statutory mandatory minimum. Judge Swartz, therefore, gave Petitioner the lowest minimum sentence that was within his discretion.

Because Petitioner offers no support for his claim that Judge Swartz was biased against Petitioner, Petitioner's judicial bias claim is plainly meritless.

---

[9] The SCAO Report, which took into account all sentences and the sentencing guidelines, did not support Petitioner's proposition either. The WEP Report did not report data by individual judge.

### D.      Conclusion Regarding a Stay

Petitioner has failed to demonstrate cause for his failure to raise and exhaust the "new" affidavit or witness perjury claims in his first motion for relief from judgment. Moreover, because neither claim is "new" and because a duly diligent petitioner would have discovered the factual predicate for those claims more than a year before Petitioner raised the claims for the first time in this Court, the claims would be untimely and, therefore, plainly meritless. Petitioner has failed to demonstrate two of the *Rhines* factors with regard to those claims. Petitioner has also failed to demonstrate that this judicial bias claim is not plainly meritless.

Because Petitioner has failed to justify a stay with regard to any of his "new" claims, his motion for stay will be denied. That does not mean Petitioner cannot pursue those claims in state court by way of a successive motion for relief from judgment; it simply means this Court will not stay these proceedings while Petitioner seeks that relief.

The Court will proceed to address the merits of the claims that Petitioner presented in his initial petition.

## II.      AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### A.     Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is

"whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

On Petitioner's direct appeal, the Michigan Court of Appeals addressed Petitioner's ineffective assistance claim under the following standard:

> In order to receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. Spisak*, 558 U.S. 139, 149; 130 S. Ct. 676; 175 L. Ed. 2d 595 (2010) (quotation marks and citation omitted); *People v. Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012). "Because defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001).

*Harris*, 2020 WL 359653, at *2. The appellate court did not cite *Strickland* as the source of the standard it applied, but *Smith* and *Trakhtenberg*, both derive their respective statements of the standard directly from *Strickland*. *Smith*, 558 U.S. at 149, *Trakhtenberg*, 826 N.W.2d at 143.

Not all of Petitioner's ineffective assistance claims were addressed by the Michigan Court of Appeals. The appellate court resolved only the ineffective assistance claims raised in Petitioner's first and second habeas grounds. The remaining ineffective assistance claims were resolved by the trial court when that court denied Petitioner's motion for relief from judgment. The trial court also derived the standard it applied from *Strickland*. Op. & Order, *People v. Harris*, No. 17-296-FC (Washtenaw Cnty. Cir. Ct. Jun. 30, 2021), (ECF No. 5-14, PageID.1063–1064.)

The state courts' applications of the correct standard eliminate the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

23

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the state courts applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Strickland*.[10]

The Supreme Court has explained that an unreasonable application of clearly established federal law

must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

---

[10] Petitioner might also overcome AEDPA deference if the state court's resolution was based on an unreasonable determination of the facts, 28 U.S.C. 2254(d), but he does not make that argument.

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103], 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011).

*White*, 572 U.S. at 419–20. The Supreme Court has described the standard as "difficult to meet . . .

because it was meant to be." *Harrington*, 562 U.S. at 102. The Sixth Circuit has similarly

commented on the difficulty of satisfying that standard:

> This standard is a heavy burden for a petitioner to satisfy. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [*Harrington*, 562 U.S. at 102]. Indeed, "so long as fairminded jurists could disagree on the correctness of the state court's decision," the law precludes this court from granting habeas relief. *Id.* at 101, 131 S. Ct. 770 (internal quotation marks and citation omitted).

*Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019). Petitioner has not met the standard.

### 1. Failure to Investigate or Solicit Testimony from an Expert Witness (Habeas Ground I)

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claim relating

to expert witness testimony as follows:

> An attorney's decision whether to retain an expert witness is generally a matter of trial strategy. *People v. Payne*, 285 Mich. App. 181, 190; 774 N.W.2d 714 (2009). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id.* (quotation marks and citations omitted). A defense is substantial if it is one that might have made a difference at trial. *See People v. Chapo*, 283 Mich. App. 360, 371; 770 N.W.2d 68 (2009). Defense counsel is afforded wide latitude on matters of trial strategy, and we will not substitute our judgment for that of defense counsel, nor will we review the record with the added benefit of hindsight on such matters or second-guess defense counsel's judgment on matters of trial strategy. *See People v. Unger*, 278 Mich. App. 210, 242–243; 749 N.W.2d 272 (2008). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689; 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984). "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v. Williams*, 240 Mich. App. 316, 332; 614 N.W.2d 647 (2000).

> Defendant argues that defense counsel's failure to call an expert witness in forensic psychology to testify regarding the reliability of the children's testimony

constituted ineffective assistance of counsel. We disagree. Although defendant has provided an affidavit from a potential expert witness, that affidavit merely states generally that there are a "variety of reasons" why a child's testimony may be unreliable, but it does not identify any specific unreliability in AH's or BR's testimony to which the expert would have testified had he been retained. Defendant has not established the factual predicate for his claim. *See Carbin*, 463 Mich. at 600.

Further, the record shows that defense counsel repeatedly cross-examined AH and BR concerning inconsistent statements that they made during forensic interviews and preliminary examinations before trial. We are not convinced that defense counsel's decision to pursue a strategy of directly questioning the complainants regarding their inconsistent statements, rather than enlisting an expert witness to testify regarding the reasons why they may have made such statements, was not a sound trial strategy, albeit an unsuccessful one in this case. *See Unger*, 278 Mich. App. at 242–243.

In any event, even assuming that defense counsel's failure to call an expert witness fell below an objective standard of reasonableness, defendant has not shown prejudice. *See Trakhtenberg*, 493 Mich. at 51. The trier of fact is tasked with determining how much weight to afford to testimony. *See People v. Breeding*, 284 Mich. App. 471, 487; 772 N.W.2d 810 (2009). The trier of fact "is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v. Perry*, 460 Mich. 55, 63; 594 N.W.2d 477 (1999). In this case, the trier of fact heard AH's and BR's testimony, and was also presented with evidence that they had made inconsistent statements on prior occasions. These inconsistent statements concerned certain specific details of the alleged assaults; the complainants remained relatively consistent concerning the overall nature of the assaults, although defense counsel did elicit testimony from BR that she had initially only disclosed two assaults to a forensic interviewer, not three. Defendant has not presented any evidence that his proposed expert witness would have opined specifically that AH's and BR's trial testimony was unreliable. On the whole, defendant has not shown that his proposed expert's testimony was reasonably likely to have altered the outcome of the proceeding. *Payne*, 285 Mich. App. at 190.

We conclude that defendant has not demonstrated that his counsel was ineffective. *Trakhtenberg*, 493 Mich. at 51.

*Harris*, 2020 WL 359653, at *2–3.

The appellate court's determination appears to be reasonable on its face. Indeed, it echoes

clearly established federal law. The United States Supreme Court has recognized that "[t]he

selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that,

when made 'after a thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'"

26

*Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690.). Petitioner attempts to squeeze his challenge within the narrow confines of "challengeable" expert witness decisions by claiming that counsel failed to thoroughly investigate. (Pet'r's Mot. to Remand, ECF No. 5-15, PageID.1088.) Petitioner claims "there is nothing in the record to indicate that trial counsel ever consulted an appropriate expert." (Pet'r's Mot. to Remand, ECF No. 5-15, PageID.1088; Pet'r's Appeal Br., ECF No. 5-15, PageID.1158.) But that turns the burden of establishing ineffective assistance of counsel on its head. In fact, there is no record support for Petitioner's contention that counsel did ***not*** investigate the possibility of obtaining expert testimony. Absent such support—absent some record evidence to support his claim that counsel failed to investigate—Petitioner cannot overcome the presumption that counsel's actions fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even without the presumption, it is apparent that Petitioner's claim of ineffective assistance fails. Petitioner offers no record support for his implicit contention that an expert exists who was willing to testify and whose testimony would be favorable to Petitioner. The court of appeals noted that the expert consulted by appellate counsel made no representations that his testimony would have been favorable. (*See* Aff. of Dr. David Thompson, ECF No. 5-15, PageID.1492–1493.) Indeed, the expert made clear that he had not examined any of the records that might have permitted him to offer opinions with regard to the testimony of the victims. (*Id.*) Without some record support for the contention that an expert would have provided favorable testimony, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue such expert testimony or that it made any difference in the result. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991)

(footnote omitted); *see also Lagrone v. Parris*, No. 23-5177, 2023 WL 5623279, at \*4 (6th Cir. Aug. 7, 2023) ("Lagrone did not identify an expert his trial counsel could have called or indicate what an expert could have testified that would have been relevant to his defense. The speculative impact of expert testimony is not enough to prove prejudice under *Strickland*."); *Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) (stating that "[t]he salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

In short, Petitioner has failed to demonstrate that the Michigan Court of Appeals' rejection of this ineffective assistance of counsel claim is an unreasonable application of clearly established federal law. Therefore he is not entitled to habeas relief on his first habeas ground.

### 2.    Failure to Ensure that Petitioner Understood the Jury Waiver (Habeas Ground II)

Petitioner next contends that counsel failed him because counsel permitted Petitioner to sign a jury waiver form without explaining its significance. Petitioner reports that he "didn't understand the difference between a bench and a jury trial." (Pet., ECF No. 1, PageID.7.)

A criminal defendant's right to trial by a jury of peers is "fundamental to the American scheme of justice." *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). "Trial by jury is the normal[,] and . . . the right of the accused to a trial by a constitutional jury" must be "jealously preserved." *Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970). A defendant may waive the right if four conditions are met: "(1) the waiver must be in writing; (2) the government must consent to the waiver; (3) the trial court must consent to the waiver; and (4) the defendant's waiver must be voluntary, knowing, and intelligent." *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007); *see also Patton*, 281 U.S. at 312. To be "voluntary, knowing, and intelligent," *Haliym*, 492 F.3d at 698, "the defendant must understand the choice he faces is to be judged by a jury composed of people from the community as opposed

to having his guilt or innocence determined by a judge," *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (citing *Haliym*, 492 F.3d at 698). Further, the defendant must have "sufficient awareness of the relevant circumstances and likely consequences." *Haliym*, 492 F.3d at 698 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Whether a waiver has been intelligent and knowing "depend[s] upon the unique circumstances of each case," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942), and "[a] petitioner bears the burden of proving that his waiver of a jury trial was not knowing, voluntary, or intelligent." *Haliym*, 492 F.3d at 698 (citing *Sowell v. Bradshaw*, 472 F.3d 821, 832 (6th. Cir. 2004)).

The Michigan Court of Appeals described the record evidence of Petitioner's jury trial waiver as follows:

> Before trial, defendant signed a written waiver of his right to a jury trial, stating that he "voluntarily waive[d] and relinquish[ed his] right to a trial by jury and elect[ed] to be tried by a judge." Before the bench trial began, the trial court discussed the waiver with defendant:
>
>> The Court: [Defendant], you've signed this jury trial waiver form. You understand that just means that you give up your right to have a case tried by a jury, and I'll be trying it myself alone.
>>
>> Defendant: Yes, sir.
>>
>> The Court: And that's acceptable with you.
>>
>> Defendant: Yes.
>>
>> The Court: All right, well, all parties have signed off, so we'll set the matter as indicated, the 22nd of September at 9 a.m. for a bench trial. Bond is continued.

*Harris*, 2020 WL 359653, at *1.

The focus of Petitioner's argument on appeal was that the trial court failed to comply with the procedural protections put in place to protect the jury trial right in Michigan. (*See* Pet'r's Appeal Br., ECF No. 5-15, PageID.1163–1167 (stating "the trial court failed to comply with MCR

6.402 to ensure that [Petitioner's] waiver was voluntary and understanding" and citing Michigan

Court of Appeals authority regarding the Michigan Court Rule).) Thus, the appellate court's focus

on compliance with the court rule, as set forth below, is understandable.

The Michigan Court of Appeals resolved Petitioner's challenge as follows:

A criminal defendant has a constitutionally guaranteed right to a jury trial. U.S. Const., Am. VI; Const. 1963, art. 1, § 20. However, a defendant may waive his right to a jury trial. *See* MCR 6.401. Under MCR 6.402(A), a trial court may not accept a defendant's waiver until he or she has had the opportunity to consult with a lawyer. MCR 6.402(B) further provides:

Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

A defendant's waiver is presumptively valid if the trial court complied with MCR 6.402(B). *People v. Mosly*, 259 Mich. App. 90, 96; 672 N.W.2d 897 (2003).

We conclude that the trial court properly ascertained that defendant understood his right to a jury trial and that he voluntarily waived that right. *See People v. Shields*, 200 Mich. App. 554, 560–561; 504 N.W.2d 711 (1993). We reject defendant's comparison to *People v. Cook*, 285 Mich. App. 420; 776 N.W.2d 164 (2009). In *Cook*, the defendant did not sign a written waiver form, nor did the trial court inform the defendant of his constitutional right to a jury trial. *Id*. at 423. Further, the defendant objected when the trial court found that he had waived his right to a jury trial. *Id*. In this case, defendant signed a written waiver, the trial court informed him of his right to a jury trial, and defendant acknowledged that he understood and did not object or contend that his waiver was involuntary. *See id*. at 423. Although the trial court did not, when discussing the matter with defendant, specifically identify the right as a "constitutional" one, it did make clear that defendant had a right to a trial by jury. The trial court did not plainly err in its advice to defendant merely by referring to a "right" rather than a "constitutional right," particularly since the discussion related to defendant's signature on a written jury-trial waiver form that did advise defendant that his right to a jury trial was a constitutional one.

*Harris*, 2020 WL 359653, at *3.

Petitioner presents his jury-trial-waiver claim to this Court exactly as he presented it to the

Michigan appellate courts. To the extent his claim depends on the trial court's failure to comply

with the Michigan Court Rules, it is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The appellate court's conclusion that the trial court satisfied the requirements of Mich. Ct. R. 6.402 conclusively resolves that issue. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) (stating "[w]e are . . . bound by the Florida Supreme Court's interpretation of state law. . .). The Sixth Circuit repeatedly has recognized "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

The question as to whether Petitioner's waiver was knowing, however, remains. The court of appeals' analysis of that issue is entirely consistent with the clearly established federal law cited above. Petitioner indicated that he was aware that by signing the form he was giving up the right to have the case heard and determined by a jury and that the judge would instead fill that role.

Petitioner's present conclusory statement to the contrary is unconvincing. Indeed, Petitioner offers no explanation with regard to what aspect of the waiver he did not understand.

Although the jury trial waiver lies at the heart of Petitioner's second habeas ground, Petitioner presents the ground as an ineffective assistance of counsel claim. The Michigan Court of Appeals ruled against Petitioner on that aspect of the challenge as well. *Harris*, 2020 WL 359653, at *3 (stating "because there is no merit to defendant's contention that the trial court failed to comply with MCR 6.402, defense counsel was not ineffective for failing to raise a futile objection"). That resolution is entirely consistent with clearly established federal law. *See, e.g., Coley*, 706 F.3d at 752 (stating "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Petitioner shifts his focus in the presentation of his ineffective assistance claim to this Court. Here, counsel's shortcoming was not a failure to object, it is a failure to explain the significance of the waiver to Petitioner. Even if counsel failed to explain the significance of the waiver, and even if that failure were professionally unreasonable, the trial court's explanation of the consequence of the waiver eliminated any possible prejudice from counsel's failure. Accordingly, Petitioner has failed to demonstrate that the Michigan Court of Appeals' rejection of the ineffective assistance claim was an unreasonable application of clearly established federal law.

### 3.    Failure to Object to References to Complainants as Victims (Habeas Ground III (A))

The remainder of Petitioner's ineffective assistance of counsel claims were raised for the first time in his motion for relief from judgment. As noted above, Petitioner never fairly presented those claims to the Michigan Supreme Court. The Michigan Supreme Court rejected Petitioner's requests to file a late application for leave to appeal and the court indicated it would neither file nor consider an application if Petitioner filed one after the deadline.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436–37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup*, 513 U.S.

at 327). As noted above, Petitioner has failed to demonstrate that he is actually innocent of the CSC-I and CSC-II charges. *See supra note* 7.

Petitioner suggests that there was "cause" for his failure to timely file an application for leave to appeal to the Michigan Supreme Court: he tested positive for COVID-19 shortly before the deadline and restrictions imposed by the Michigan Department of Corrections because of the pandemic prevented him from accessing the resources necessary to comply with the deadline. Assessing whether Petitioner has established prejudice because of the procedural default of his ineffective assistance of counsel claims necessarily overlaps with the merits of those claims in that the merits also require an examination of prejudice from the alleged underlying professionally unreasonably conduct.

The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, the procedural default issue raises more questions than the case on the merits. Under those circumstances, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215–

16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). That is the course the Court will follow with regard to Petitioner's remaining claims.[11]

In Petitioner's motion for relief from judgment he argued that the prosecutor and the investigating detective, when referring to the "complainants" used the term "victims."[12] By using the term "victims" to refer to Petitioner's daughters, Petitioner contends, the prosecutor and the detective "usurped the role of the fact-finder and concluded that the Complaining witnesses [were] wronged by the Defendant." (Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 5-10, PageID.945.) That practice, Petitioner contended, "is egregious and inconsistent with the presumption of innocence." (*Id.*) Petitioner acknowledges that the references were not frequent; but he suggests they "may have tipped the scale in this credibility contest." (*Id.*)

The trial court did not address this claim on the merits. Instead, the court pointed out additional layers of procedural default: Petitioner "failed to adequately address either the performance component or the prejudice component of an ineffective assistance of counsel claim," Op. & Order, *Harris*, No. 17-296 (Washtenaw Cnty. Cir. Ct. Jun. 30, 2021), (ECF No. 5-14, PageID.1064); and Petitioner "fail[ed] to adequately address either the incompetence component or prejudice component of an ineffective assistance of appellate counsel claim," (*Id.*, PageID.1065), to establish cause for his failure to raise the ineffective assistance of trial counsel claim on direct appeal. Again, this Court will avoid the layers of "prejudice" analysis necessary to

---

[11] As discussed below, in addressing Petitioner's claims on the merits, the Court concludes that Petitioner has failed to demonstrate that he suffered any prejudice by virtue of counsel's alleged professionally unreasonable conduct. That lack of prejudice necessarily means that Petitioner was not prejudiced by the Michigan Supreme Court's enforcement of the procedural default. Thus, the Court could alternatively reject Petitioner's remaining habeas claims because of Petitioner's procedural default.

[12] A review of the transcript reveals that the term "complainant" was never used during the trial by the judge, counsel, or any witness. (Trial Tr., ECF No. 5-8.)

enforce these procedural defaults in favor of just addressing the ineffective assistance claim on the merits.

The term "victims" is used three times in the trial transcript. The first time was not a reference to Petitioner's victims, it was simply a reference to victims of criminal sexual assault generally:

| | |
|---|---|
| Prosecutor: | And have you investigated crimes involving children that were the victims of criminal sexual conduct? |
| Detective Sinks: | I have, sir. |

(Trial Tr., ECF No. 5-8, PageID.785.) This reference does not implicate the constitutional concern that animates Petitioner's habeas challenge. It does not call into question the presumption that Petitioner is innocent.

The prosecutor followed up with a series of questions inviting the detective to walk the trial judge through the steps followed during the investigation of the complaint against Petitioner. (*Id*., PageID.786–791.) The detective indicated that he spoke to Petitioner's wife. That led to interviews of Petitioner's daughters at the Washtenaw County Child Advocacy Center. The detective explained that notes from the interviews were compiled into a report relating to each daughter. That prompted the following exchange:

| | |
|---|---|
| Prosecutor: | And that report that is compri -- that is compiled or -- or executed by this Ms. Lanika (ph), that is the subject then that you use when you are submitting a warrant request? |
| Detective Sinks: | That is, that serves as the statements in this case of the victims. |
| Prosecutor: | Okay, so as a standard investigative procedure, after you have got a statement from each of the victims and the allegations and you understand, generally, where the allegations are said to have taken place, the time frame that they've taken place, and now you have some specifics, what is the next thing that you wanted to do? |

> Detective Sinks:       The next thing I wanted to do is contact the suspect in this case, Mr. Harris, to see if Mr. Harris would speak to me about the case.

(*Id.*, PageID.790.) Two times Petitioner's daughters are called "victims."

To prevail on his claim, Petitioner must show that the references to the daughters as "victims"—or more accurately counsel's failure to object to those references—rendered his trial unfair. In support of the claim, Petitioner cites *Berger v. United States*, 295 U.S. 78 (1935), where the Court stated:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger*, 295 U.S. at 88. The Court went on to explain why it considered the blows struck by the United States Attorney in that case to be foul ones:

> That the United States prosecuting attorney overstepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown by the record. He was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner.

*Id.* at 84.

Petitioner does not suggest that the "victims" references in his case fit squarely within the list of "foul blows" identified by the *Berger* Court. Instead he cites two state supreme court cases

that questioned the use of such references: *State v. Sperou*, 442 P.3d 581 (Ore. 2019) and *State v. Mundon*, 292 P.3d 205 (Haw. 2012). Neither of those cases identified a United States Supreme Court case or any federal case where it was determined that such references interfered with the presumption of innocence or rendered the trial unfair. Indeed, the Ninth Circuit Court of Appeals concluded that referring to the persons harmed by a criminal scheme as "victims" fell within the prosecutions "considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996); *see also, e.g.*, *Carr v. Haas*, No. 17-2527, 2019 WL 2644732, at *1 (6th Cir. Jan. 8, 2019) ("Carr first asserts that the trial judge 'pierc[ed] the veil of impartiality' by calling Wallace a 'victim' and that a juror was allowed to start with the presumption that Wallace was indeed a 'victim.' . . . The district court agreed with the Michigan Court of Appeals and denied habeas relief on Carr's claim about the 'victim' references. Reasonable jurists could not disagree with the district court's rejection of this claim."); *Server v. Mizell*, 902 F.2d 611, 615 (7th Cir.1990) (holding that a jury instruction's use of the term "victim" was not prejudicial "as it merely posits that if an act of sexual conduct or sexual abuse occurred, it must have been perpetrated on a victim"); *Kaufman v. Milyard*, No. 07-cv-01458-REB-KMT, 2009 WL 3254485, at *8 (D. Col. Oct. 6, 2009) (stating that "this court is otherwise unable to find, any clearly established federal law, as promulgated by the Supreme Court, that holds that referring to the complaining witness as the 'victim' violates a defendant's constitutional rights").

This Court concludes that after Petitioner's daughters testified, there was evidence in the record that supported a reasonable inference that they were victims. Any references to the daughters as victims, therefore, was fair comment on the evidence and well within the constitutional boundaries identified in *Berger*. Accordingly, the Court concludes that it was not

professionally unreasonable for Petitioner's counsel to forego the meritless objection Petitioner now urges.

Additionally, where the very limited references to the daughters as victims occurred during a bench trial, the Court concludes that Petitioner has failed to identify any possible prejudice. As the Sixth Circuit explained in *Cameron v. Rewerts*, 841 F. App'x 864 (6th Cir. 2021):

> Our judicial system operates under a fundamental presumption that trial judges are impartial, even when presented with inadmissible or prejudicial information. *Harris v. Rivera*, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (noting "a presumption of honesty and integrity in those serving as adjudicators"). For that reason, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

*Cameron*, 841 F. App'x at 866; *see also United States v. Joseph*, 781 F.2d 549, 552–53 (6th Cir.1986) (stating that "[i]t is well settled that in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice").

Because Petitioner has failed to demonstrate that counsel's failure to object was professionally unreasonable or that Petitioner suffered any prejudice, his claim that counsel rendered ineffective assistance is meritless.

### 4.      Failure to Investigate Medical Records (Habeas Ground III (B)(1))

Petitioner next contends that counsel rendered ineffective assistance because counsel failed to investigate and/or introduce into evidence medical records indicating that Petitioner "suffered from serious back injuries causing severe spasms and limited range of motion." (Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 5-10, PageID.946.) Petitioner attached to his brief provider notes from a doctor relating to a visit Petitioner paid to the University of Michigan Health

System on September 6, 2014. (Provider Notes, ECF No. 5-10, PageID.982–985.)[13] Petitioner claims that the notes support his claim that he suffers from "[d]ecreased range of motion, tenderness, pain and [back] spasms." (Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 5-10, PageID.949.) Thus, Petitioner argues, it was "medically impossible for [Petitioner] to have touched both of his [younger daughter's] arms, shoulders and legs while laying on his back," thereby providing Petitioner with a substantial defense. (*Id.*)

Petitioner reads far more into the provider notes than the words that are actually on the page. The notes do not indicate the severity of the decreased range of motion and, in fact, the day of the examination, Petitioner reported his pain was only "2 out of 10 and tolerable." (Provider Notes, ECF No. 5-10, PageID.984.) There is nothing in the notes that suggests that the activities described by Petitioner's daughters were beyond his physical capacity.

Even though the provider notes from September 6, 2014, were not part of the trial record, the trial transcript is replete with references to Petitioner's back problems. His back problems were the reason he was not working outside the home but instead worked in the role of stay-at-home father. Moreover, Petitioner's daughters described the back problems as one of the reasons Petitioner would invite them into his bedroom—because it was their turn to give Petitioner a back massage.

The existence of Petitioner's back problems was undisputed. The evidence he contends counsel failed to present adds nothing. The evidence certainly does not support his claim that he was physically incapable of sexually assaulting his daughters. Under these circumstances, Petitioner has failed to meet his burden of showing that counsel was professionally unreasonable

---

[13] The notes relating to Petitioner's September 6, 2014, visit end near the last page of Petitioner's attachment. Then there is the very beginning of a new provider note related to another visit on November 11, 2015, also complaining of back pain. (Provider Notes, ECF No. 5-10, PageID.985.)

for failing to investigate or present the evidence; nor has Petitioner met his burden of showing that

he suffered prejudice as a result. Petitioner is not entitled to habeas relief on this claim.

### 5. Failure to Investigate and Present Testimony Regarding Domnique (Habeas Ground III (B)(2))

Petitioner also contends that counsel failed to investigate or present evidence regarding the

"tether" records of the victims' brother Domnique. The testimony at trial indicated that Domnique

was on parole and was required to wear an electronic tether. Petitioner contends that both victims

testified that Domnique was not present at the home at a time when the conditions of his parole

would have required him to be present. Petitioner contends that counsel should have investigated

the electronic tether monitoring records from the MDOC because the records might have refuted

that testimony.

The claim is entirely speculative. Petitioner does not provide any indication that the

monitoring records actually support his contention. Moreover, the victims did not definitively

identify the dates of particular assaults. Under these circumstances, Petitioner has failed to meet

his burden of showing that counsel was professionally unreasonable for failing to investigate or

present the evidence; nor has Petitioner met his burden of showing that he suffered prejudice as a

result. Petitioner is not entitled to habeas relief on this claim.

### 6. Failure to Properly Advise Petitioner Regarding a Plea Offer (Habeas Ground III (C))

Petitioner recounts the following sequence of events regarding the plea offer:

Trial counsel came to the bullpen in the Courthouse moments before trial to tell this Affiant that the prosecutor offered 6–10 years minimum prison term for a guilty plea.

Affiant asked counsel "what does they want me to plead to?" Trial counsel did not answer the question, but replied, "If you didn't do any of those horrible things, you shouldn't plead guilty." Affiant said "okay." Affiant was not given a moment to discuss the plea with his family or an answer to his question.

Affiant respectfully submits that the entire plea conversation was less than one minute. At no time during the representation did trial counsel explain the elements of 1st or 2nd-degree CSC to this Affiant, nor exactly what constitutes penetration for the purpose of first-degree CSC.

Trial counsel never discussed the pros and cons of a plea versus a trial, nor did she comment on her assessment of the strengths and weakness of the prosecution's case.

Affiant has pled guilty to previous crimes and would have accepted a 6–10 years minimum here if counsel would have explained that a claim of innocence does not preclude a guilty plea.

(Pet'r's Aff., ECF No. 5-10, PageID.922.)

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id*. Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

Petitioner's affidavit generally tracks the requirements of *Lafler* and *Frye*; but his averments do not match up very well with the state court record. First, it appears that Petitioner's memory is faulty with regard to the timing of the final offer. It appears the offer was made for the last time at the final pretrial hearing. (Final Pretrial Hr'g Tr., ECF No. 5-7.) Indeed, it appears the final pretrial hearing was scheduled for the singular purpose of putting the offer and Petitioner's response on the record. (*See id.*, PageID.665.) Petitioner's counsel indicated that she asked the court to schedule the hearing because she and the prosecutor had participated in negotiations and she wanted to "put that information on the record so that everybody is aware of what's been offered, and what—what's at stake here." (*Id.*)

The prosecutor reiterated the offer—a guilty plea to a charge of assault with intent to commit sexual penetration with a sentence of 6 to 10 years. (*Id.*) The prosecutor noted that the CSC-II charges carried a 15-year maximum and the CSC-I charges carried a mandatory minimum of 25 years. (*Id.*, PageID.665–666.) The prosecutor indicated that it was a take it or leave it offer open only for a day. (*Id.* PageID.666.)

Counsel asked Petitioner if he wished to reject the offer; he responded "Yes." (*Id.*, PageID.666–667.) She also asked Petitioner if the time that counsel and Petitioner had to discuss the offer was sufficient; he again responded "Yes." (*Id.*, PageID.667.)

It is virtually impossible to reconcile the after-the-fact affidavit testimony with the hearing transcript. The Court is inclined to reach the same conclusion that the trial court did. The trial court did not believe Petitioner's testimony and "[found] his testimony to be incredible . . . ." (Trial Tr., ECF No. 5-8, PageID.899.) The state court's determination of that factual issue is presumed to be correct. 28 U.S.C. § 2254(e)(1). Petitioner has the burden of rebutting that presumption with clear and convincing evidence. *Id.* He has not met that burden.

Of course, the presumption of correctness accorded the determination that Petitioner was lying in his trial testimony does not mean that Petitioner lied in his affidavit. Nonetheless, based on the Court's review of the trial testimony, considering Petitioner's history of guilty pleas, and finding it impossible to reconcile the trial court record and Petitioner's after-the-fact inconsistent averments, the Court also concludes that Petitioner's affidavit averments are incredible.

The Court's rejection of Petitioner's claim, however, does not depend on the conclusion that Petitioner's claim is incredible. Even accepting everything that Petitioner alleges as true, he cannot prevail on a *Lafler* ineffective assistance claim. The plea Petitioner intended to make was a plea of guilty to a charge of assault with intent to commit sexual penetration while still maintaining his complete innocence of even that charge. (Pet'r's Aff., ECF No. 5-10, PageID.922 ("Affiant . . . would have accepted a 6–10 years minimum here if counsel would have explained that a claim of innocence does not preclude a guilty plea.").)

Michigan Court Rule 6.302(D) requires the trial court to ensure that the plea is accurate "by questioning the defendant [to] establish support for a finding that the defendant is guilty of . . . the offense to which the defendant is pleading." Mich. Ct. R. 6.302(D)(1). If, as Petitioner swears, he intended to maintain his innocence of the charge of assault with intent to commit sexual penetration, the trial court could not have accepted his plea.

The Michigan Court of Appeals considered a similar fact scenario in *People v. White*, 951 N.W.2d 106 (Mich. Ct. App. 2020). The *White* court explained:

> [A] trial court may not accept a guilty plea without placing the defendant under oath and establishing a factual basis for the defendant's guilt. MCR 6.302; *People v. Watkins*, 468 Mich. 233, 238, 661 N.W.2d 553 (2003). Courts in Michigan are required to evaluate a defendant's actual guilt before accepting a plea, not just "the mere expression of willingness by the prosecutor and defendant to strike a bargain." *See People v. Butler*, 43 Mich. App. 270, 279–280, 204 N.W.2d 325 (1972). It is not disputed that defendant maintained his actual innocence of all charges other than possession of marijuana, and he continued to maintain his actual innocence

> throughout the *Ginther* hearing. If defendant truly had not committed (or truly believed he had not committed) any of the crimes to which he allegedly confessed, then entering a guilty plea would have entailed committing perjury. MCL 750.423(1). It is per se not ineffective for counsel to refrain from seeking to admit perjured testimony; indeed, counsel is obligated to prevent a client from committing perjury of which counsel is aware. *See People v. Collier*, 105 Mich. App. 46, 56, 306 N.W.2d 387 (1981); *see also* MCL 750.424; MCL 750.425.

*White*, 951 N.W.2d at 152–53. Because the defendant maintained his innocence, the court of appeals concluded the trial court would not have accepted the plea, thereby foreclosing any *Lafler* claim of ineffective assistance of counsel. *Id*. at 154–55. Similarly, and more recently, in *People v. Hatchett*, No. 351289, 2022 WL 128106 (Mich. Ct. App. Jan. 13, 2022), the court stated:

> [D]efendant avers that he is actually innocent of the charges. If so, to successfully plead guilty to the charges required by the plea offer, one count of CSC-I and one count of felony-firearm, defendant would have had to provide false testimony to the trial court indicating that he was guilty of these charges. *See* MCR 6.302(D)(1) ("If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading."). Defendant is simply not entitled to a reopening of the plea offer, or even an evidentiary hearing on the matter, when the logical basis for his argument is that he would have provided false testimony to the trial court to induce it to accept his plea. Indeed, the trial court would have been duty-bound to reject his plea if it was aware that the plea was factually inaccurate. *See id.*

*Hatchett*, 2022 WL 128106, at *2 (footnote omitted).

Based on these authorities, the Court concludes that Petitioner has failed to demonstrate that the trial court would have accepted Petitioner's plea. Under *Lafler*, therefore, Petitioner cannot show the prejudice necessary to establish an ineffective assistance of counsel claim.

## B.    Ineffective Assistance of Appellate Counsel (Habeas Ground IV)

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate

advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

As thoroughly discussed above, Petitioner's claims of ineffective assistance of trial counsel lack merit. Where a "claim of ineffective assistance of trial counsel lacks merit, . . . appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer*, 264 F.3d at 676 (stating that "[i]f trial counsel performed adequately, our inquiry is at an end; by definition, appellate cannot be ineffective for a failure to raise an issue that lacks merit" (footnote omitted)). Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. The Court will deny Petitioner a certificate of appealability.

Moreover, although the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

Petitioner's request for a stay to pursue exhaustion of three proposed new claims in the state court will be denied because the claims are meritless or because Petitioner has failed to demonstrate good cause for his failure to previously raise those claims. With regard to the claims expressly stated in the petition, the Court will deny relief because Petitioner has failed to raise a meritorious federal claim. The Court will also deny a certificate of appealability.

Dated: September 12, 2023

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE